IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

KAYE F. LANGFORD,

    Plaintiff,

vs.                                        CASE NO. CV-04-J-559-NE

UNUM LIFE INSURANCE
COMPANY OF AMERICA, et al.,

    Defendants.



## MEMORANDUM OPINION

Pending before the court is defendants' motion for judgment on the administrative record, or in the alternative, motion for summary judgment (doc. 18) and submission of discovery in support of said motion (doc. 19). The plaintiff, appearing *pro se*, filed a brief in opposition to said motion (doc. 21), response and objections to defendant Unum's separate statement of undisputed and material facts (doc. 22), and a supplemental brief in opposition to defendant Unum's motion for summary judgment[1] (doc. 27). The defendants then filed a reply to plaintiff's brief (doc. 30)

The court having considered the pleadings, evidence and memoranda of the parties, finds as follows:

---

[1] In her supplemental brief, the plaintiff challenges Unum's standing under ERISA to seek summary judgment. Finding this argument to be without merit, the court does not discuss it further, The court also does not consider the plaintiff's request to amend her complaint to add the TRW Employee's Benefit Plan as a defendant, as that entity is already a defendant in this action. The plaintiff has not filed a motion for this relief, therefore it requires no ruling.

The plaintiff filed the complaint in this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), asserting that the defendants wrongfully terminated her long term disability benefits, in violation of 29 U.S.C. § 1132(a)(1)(B).

## FACTUAL BACKGROUND

Plaintiff was employed by TRW, Inc., as a software engineer. On May 10, 1984, the plaintiff purchased a disability insurance policy through her employer. Complaint, ¶ 2. The plaintiff first applied for benefits under the plan on February 27, 2994, asserting a disabling illness which began February 11, 1994. Complaint, ¶¶ 3-4. According to documents completed by the plaintiff's physician, the plaintiff suffered from a seizure disorder. UPCL0021-0022. The plaintiff was approved for benefits on October 10, 1994, with benefits retroactive to August 5, 1994.[2] UPCL0045-0048. At that time, the plan was administered by Aetna. *See e.g.*, UPCL 0048, 0113. Unum took over administration of the plan beginning January 1, 1998. UPCL0113.

On December 5, 2000, defendant Unum received documents from one of plaintiff's treating physicians which showed an EEG conducted on November 7, 2000 with results "within normal limits." UPCL0340,0342. Thus same records indicated that the plaintiff's last grand mal seizure occurred in January, 2000. UPCL0343. Based on this information, Unum notified the plaintiff on January 16, 2001 that it was canceling her disability benefit payments. UPCL0351-0352.

---

[2]The policy required six months of disability before eligibility for benefits began. Long Term Disability (LTD) Policy, submitted as Exhibit A to plaintiff's complaint, at 3.

Although defendant asserts it notified the plaintiff by telephone on January 16, 2001 that she had 60 days to appeal the decision to terminate her benefits, the plaintiff did not file an appeal until April 8, 2001. UPCL0353, 0362-0363. On July 20, 2001, defendant Unum informed the plaintiff it was denying her appeal because it was not timely. UPCL0843. On September 21, 2001 plaintiff's employer, through defendant TRW Employee Benefit Plan Trust ("TRW"), requested defendant Unum to reconsider the plaintiff's appeal and therefore, on December 31, 2001, Unum informed the plaintiff it would perform an additional review of her claim. UPCL0870, 0877.

Defendant Unum referred the plaintiff's claim to Unum's internal physician, Alan Neuren. UPCL 0890-0891. Based solely on review of her records, Dr. Neuren concluded that the plaintiff did suffer from a seizure disorder, but further concluded that, with appropriate treatment, she "should not have any trouble functioning in her usual level of activity." UPCL0890. He found her other diagnoses, including pseudoseizures, sleep apnea, anxiety, chronic fatigue, morbid obesity and hypertension, either improperly diagnosed, improperly treated, or erroneous.[3] UPCL 0890-0891.

Based on Dr. Neuren's conclusions, defendant Unum notified the plaintiff on February 8, 2002 that it would uphold its decision to terminate the plaintiff's benefits.

---

[3] At no time did Dr. Neuren actually examine the plaintiff.

UPCL0899-0902. In the February 8, 2002 letter, defendant Unum cites that portion of the policy which states that "[d]isabilities which result from any of the following will not be covered by the plan: ... An injury or illness for which the employee is not treated by a qualified physician."[4] UPCL 0899-0902. Defendant Unum informed the plaintiff that her medical restrictions did not prevent her from returning to her own occupation or performing alternative, similar occupations.[5] UPCL0900-0901. Additionally, the letter states, "[o]ur medical department has also concluded that you are not under the treatment of [a] qualified physician, as required by the terms outlined above, for either your sleep disorder or your sleep apnea." UPCL0900-0901.

On March 27, 2002, plaintiff requested further review of her claim from defendant TRW. UPCL 0929, 0931. Defendant TRW thereafter obtained plaintiff's claim file from defendant Unum. Plaintiff was examined by Dr. Lynn B. Boyer, on September 5, 2002 on referral from her own physician.[6] Dr. Boyer concluded that the plaintiff suffered from "partial complex epilepsy with secondary generalized tonic/clonic seizures," and opined that the plaintiff was disabled. Exhibit 3, ¶ 1. Dr.

---

[4] See also UPCL00976 at ¶ 7.D.

[5] Defendant Unum states in this letter that in "January of 1988 (sic), our company took over the administration of this self-insured policy. The medical information in you file from this point forward seems to indicate that you possess various levels of functional capacity. While your number of seizures reportedly increased, this increase was somehow connected to your increased activity, such as when you left the house." UPCL 0900.

[6] This examination was paid for by defendant TRW. See letter of December 13, 2002, submitted as Exhibit C to plaintiff's complaint.

4

Boyer did note that the plaintiff's last "generalized tonic/clonic seizure was over two years ago" and that the plaintiff had not had an EEG in the past two years. Exhibit 3 at 2.

On December 13, 2002, defendant TRW notified the plaintiff that her appeal of the discontinuation of her disability benefits was denied. Defendant exhibit 4. Defendant TRW concluded that defendant Unum's determination was appropriate. *See* Defendant exhibit 4. Plaintiff thereafter filed this case *pro se*, on February 4, 2004, which defendants removed to this court based on the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, *et seq*.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at

324, Fed.R.Civ.Pro 56(e). In meeting this burden, the nonmoving party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

## LEGAL ANALYSIS

The issues before the court is whether the factual findings of the claims administrator (defendant UNUM) were correct and whether the factual findings of the Plan (defendant TRW) were correct.

The defendant argues that the *de novo* standard of review applies in this case because the Plan documents do not expressly give the administrator discretionary authority to make eligibility determinations and to construe the Plan's terms. The plaintiff has not addressed the appropriate standard of review.

The Plan documents at issue here do not address who shall be the Plan Administrator or what type of authority the Administrator has to construe the terms of the Plan. *See* Long-Term Disability (LTD), UPCL 00964-00967. The Plan does states that "[c]ircumstances that may result in ... loss of benefits include: Determination by the Administrative Committee or its delegate that eligibility for benefits no longer exists...." *Id.*, UPCL00965. The contract between TRW and Unum states as follows:

> **SECTION 6. SCOPE OF SERVICES**
> Employer shall have the final authority to determine whether or not to pay claims that UNUM recommends for payment or denial and shall have the final authority to authorize payment of claims...

UPCL00954.

The Eleventh Circuit Court of Appeals recently set out the following steps in to apply in reviewing "virtually all ERISA-plan benefit denials:"

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Williams v. BellSouth Telecommunications, Inc,.* 373 F.3d 1132, 1138 (11th Cir.2004).

In that case, "BellSouth–though it retained the role of "*plan* administrator" –

employed Kemper as its "*claim* administrator." Kemper processed and decided claims that BellSouth would pay out". *Id.,* at 1135. In the facts before this court, TRW retained the role of plan administrator, but employed Unum as its claims administrator. Although defendant Unum processed and decided what claims defendant TRW would pay, TRW retained the final authority to determine whether to pay any claim. Because this leaves defendant TRW with the ultimate power to affect the disposition of specific claims, the heightened arbitrary and capricious standard of review applies. *See id.*, at 1137. *See also Torres v. Pittston Co.*, 346 F.3d 1324, 1329 (11th Cir.2003); *Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1566-67 (11th Cir.1990). In other words, the court must determine whether the decision to deny benefits was reasonable, given the information known to the administrator at the time the decision was made. *Jett v. Blue Cross and Blue Shield of Alabama, Inc.*, 890 F.2d 1137, 1139 (11th Cir.1989).

Applying the rules set forth in *Williams, supra*, the court must first determine whether the decision of the defendants was "wrong." The court does make such a finding. Based on the administrative record before this court, several doctors not employed by Unum determined that the plaintiff was not capable of working. However, defendant Unum relied on its own medical professional, who never examined the plaintiff, to terminate the plaintiff's benefits. Although defendants were

8

not bound to give the opinions of the plaintiff's treating physicians special deference when they evaluated the merits of the plaintiff's claims for continued benefits, ERISA does require "full and fair" assessment of the plaintiff's claims. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 123 S.Ct. 1965, 1967, 155 L.Ed.2d 1034 (2003).

>The plan here defines "disability" as follows:
>
>Disability, for the purpose of this LTD plan, is defined as a medically determined disability due to injury or illness which:
>
>During the first 12 months from the initial date of disability, prevents you from working at *your own* occupation or any reasonably related occupation, or
>
>Beginning with the 13th month from the initial date of disability, prevents you from working at *any* occupation for which you are or could become reasonably fitted by education, training or experience.

UPCL00966.

Defendants assert that, based on the findings and limitations of Dr. McDaris, a consulting physician to whom the plaintiff was referred by Dr. Martin, the plaintiff could return to work with the restrictions of no operating dangerous equipment, no driving, no working at heights, and accommodation of dizzy spells which occurred between 4 p.m. and 7 p.m.[7] Defendant Unum's own doctor determined that, with

---

[7]No mention of the duration of the plaintiff's dizzy spells is made, which apparently may last from five minutes to three hours. *See* UPCL00981.

9

these limitations, the plaintiff could work full-time between the hours of 7 a.m. and 4 p.m. UPCL 0351. Additionally, the defendant specifically found that the November 2000 EEG which was "within normal limits;" the lack of a grand mal seizure since January, 2000; the restrictions placed on the plaintiff would not prevent her from performing her own occupation or alternate occupations; the plaintiff was not under the treatment of qualified physicians for either her sleep apnea or sleep disorder; and that the plaintiff "should have no difficulty functioning at her usual level of activity with the appropriate treatment of a neurologist and pulmonologist." UPCL 00899-00901. However, the administrative record demonstrates that the plaintiff was under the care of Dr. George Morgan, a neurologist. *See e.g.* UPCL00926, 00928.

Defendant TRW informed plaintiff that "Unum did take into account the letter from the Neurologist in February 2002. The decision was bas[ed] on the fact the physician only wrote a letter on November 2000, March 2001 and February 2002...." Defendant Exhibit 2. From this, defendant TRW concludes "[i]f the claimant were having the frequency of seizures as she states she would be under the regular, frequent care of a Neurologist (complete with notes, tests, office visits) until these seizures are under control...." Defendant exhibit 2. Dr. Morgan's office notes from February, 2002 indicate that the plaintiff continued to have seizures "periodically while on both medications." UPCL00928. Dr. Morgan referred the plaintiff to another neurologist,

Dr. Lynn Boyer. Defendant Exhibit 3. She opines "[the plaintiff' is optimally controlled on her present antiepileptic regimen ... but is totally and permanently disabled because of the continued frequency of her partial seizures." *Id.* Additionally, evidence in the administrative record shows that the plaintiff was awarded Social Security benefits in 2001. UPCL00927.

Given the evidence in the file, the court can find no evidence that either the claims administrator or the Plan administrator considered any evidence of the plaintiff's ability to work submitted by her treating physicians. Applying *de novo* review, the court concludes that the decision was "wrong."

Having made the determination that the administrator's decision is in fact *"de novo* wrong," the court next considers whether the Plan administrator was vested with discretion in reviewing claims. *Williams*, 373 F.3d at 1138. Under the Plan language, the "Administrative Committee or its delegate," had the discretion to review claims and determine eligibility.[8] UPCL00965. Even though the court finds that the decision was "wrong," the court must still uphold the decision of the administrator if it was "wrong but reasonable" because of discretion granted the administrator. *See Yochum*

---

[8]Defendant argues that the Plan documents do not expressly give the administrator discretionary authority to make eligibility determinations and to construe to Plan's terms. Defendants' Brief in Support of Summary Judgment, at 14.

11

*v. Barnett Banks, Inc. Severence Pay Plan*, 234 F.3d 541, 544 (11th Cir.2000). In other words:

> Even if the court determines that the claimant's interpretation is reasonable, the claimant does not necessarily prevail. At first glance it seems odd that a reasonable interpretation would not automatically defeat a wrong interpretation. The reason the claimant's reasonable interpretation does not trump the claims administrator's wrong interpretation is because the plan documents explicitly grant the claims administrator discretion to interpret the plan. *See Brown,* 898 F.2d at 1563 (stressing the importance of allowing an insurance company the benefit of the bargain it made in the insurance contract). We cannot over emphasize the importance of the discretion afforded a claims administrator; the underlying premise of arbitrary and capricious, rather than *de novo,* review is that a court defers to the discretion afforded the claims administrator under the terms of the plan. *See Firestone,* 489 U.S. at 111, 109 S.Ct. at 954 quoting Restatement (Second) of Trusts § 187 (1959) ("[w]here discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion").

*HCA Health Services of Georgia, Inc. v Employees*, 240 F.3d 982, 994 (11th Cir.2001).

The court is of the opinion that the decision to end the plaintiff's benefits was wrong, but reasonable grounds existed for such determination, given Dr. Nueren's opinion. *Williams*, 373 F.2d at 1138.

Continuing down the steps outlined in *Williams*, the court must next determine if the Plan administrator operated under a conflict of interest.[9] A wrong but

---

[9]Where a company both administers and funds a plan, a conflict of interest arises, thus triggering heightened arbitrary and capricious review. *See Brown v. Blue Cross and Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1562 (11th Cir.1990); *Yochum v. Barnett Banks, Inc. Severance Pay Plan,* 234 F.3d 541, 544 (11th Cir.2000); *Levinson v. Reliance Standard Ins. Co.,* 245 F.3d

12

apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries." *Levinson v. Reliance Standard Life Ins. Co.,* 245 F.3d 1321, 1326 (11th Cir.2001). Because the court has found a conflict of interest exists, the burden shifts to the claims administrator to prove that its interpretation of the plan is not tainted by its self-interest. *Featherston v. Metropolitan Life Ins. Co.,* 223 F.R.D. 647, 653 (N.D.Fla.2004). This review applies to both plan interpretations and factual determinations of ERISA claims administrators when a conflict of interest exists. *Id.*

> The Eleventh Circuit has not specifically addressed what evidence may indicate that the administrator's factual determination was motivated by self-interest. Accordingly, a reviewing court must "contextually tailor" the burden-shifting analysis to suitably fit the factual determination process in ERISA disability claims. *Brown v. Blue Cross, supra,* 898 F.2d at 1556. Thus, in determining whether the administrator abused its discretion by advancing its own self-interest, a court might consider such evidence as whether the administrator can demonstrate the existence of a routine practice by which it reviews claims, and that it followed that routine practice in the present case. *See Williams v. BellSouth,* 373 F.3d

---

1321, 1325-26 (11th Cir.2001) (Where administrator of benefits plan governed by ERISA pays out to participants out of its own assets, a conflict of interest exists between its fiduciary role and its profit-making role, and accordingly, a heightened arbitrary and capricious standard applies in reviewing administrator's discretionary denial of benefits under the plan). *See also Buce v. Allianz Life Ins. Co.,* 247 F.3d 1133, 1141 (11th Cir.2001) (holding that heightened arbitrary and capricious standard applied where a plan administrator, despite delegating its claim processing duties to a third party, exercised the "ultimate authority to determine for itself whether payments should be made out of its own assets").

1132, 1139 (11th Cir.2004). Even a conflicted administrator should receive deference when he demonstrates that he is exercising discretion among choices which reasonably may be considered to be in the overall best interests of the plan participants and beneficiaries. *Brown, supra,* 898 F.2d at 1568.

*Featherston*, 223 F.R.D. at 657-658.

Unfortunately, the plaintiff here has focused her argument on whether defendant Unum had the authority to seek summary judgment and not whether the defendants' decision was tainted by self-interest. The plaintiff has offered no factual evidence on this necessary issue. Once the defendants filed their motion for summary judgment, the plaintiff had the burden to produce evidence demonstrating a genuine issue of material fact existed on this issue. The plaintiff wholly failed to show "by affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ.Pro 56(e).

Given the law of this circuit and the parties' submissions, the court has no choice but to grant the defendants' motion for summary judgment.

In consideration of the foregoing, the court shall grant the defendants' motion for summary judgment by separate Order.

**DONE** this the _____ 8 _____ day of November, 2004.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE